UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLOS VELASCO GOMEZ,<br><br>                     Petitioner,<br><br>         v.<br><br>BRUCE SCOTT, et al.,<br><br>                     Respondents. | CASE NO. C25-0522JLR-BAT<br><br>ORDER |

## I.  INTRODUCTION

Before the court are two motions: (1) the Federal Respondents'[1] motion to dismiss Petitioner Carlos Velasco Gomez's petition for a writ of habeas corpus (MTD (Dkt. # 4); MTD Reply (Dkt. # 16)) and (2) Mr. Velasco Gomez's motion for a preliminary injunction and stay of removal (MPI (Dkt. # 11); MPI Reply (Dkt. # 15)).

---

[1] The Federal Respondents are Cammilla Wamsley (substituted under Federal Rule of Civil Procedure 25(d) for former Defendant Nathalie Asher), Kristi Noem, and Pamela Bondi. (Petition (Dkt. # 1) ¶¶ 11-13.) Defendant Bruce Scott, Warden of the Northwest ICE Processing Center, is not a Federal Respondent. (*See* MTD (Dkt. # 4) at 1 n.1.)

ORDER - 1

Each party opposes the other party's motion. (MTD Resp. (Dkt. # 12); MPI Resp. (Dkt. # 14).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised, the court GRANTS the Federal Respondents' motion to dismiss Mr. Velasco Gomez's habeas corpus petition, DENIES Mr. Velasco Gomez's motion for a preliminary injunction, and EXTENDS by ten days the temporary restraining order staying Mr. Velasco Gomez's removal to allow Mr. Velasco Gomez the opportunity to seek emergency relief from the Ninth Circuit Court of Appeals.

## II.   BACKGROUND

**A.   The U Visa Process**

Because Mr. Velasco Gomez's application for U nonimmigrant status, commonly referred to as a "U visa," is central to this action, the court provides a brief overview of the U visa application process.

A U visa provides temporary legal status to victims of qualifying criminal activity who have suffered substantial physical or mental abuse and who cooperate with law enforcement in investigating or prosecuting those crimes. *See* 8 U.S.C. § 1101(a)(15)(U); 8 U.S.C. § 1184(p); 8 C.F.R. § 214.14(b). U-visa petitioners must show that they are admissible into the United States; if they are inadmissible, they generally must seek a waiver of certain grounds for inadmissibility. *See* 8 C.F.R. § 214.14(c)(2)(iv). The filing of a U visa petition "has no effect on the authority of [U.S. Immigration and Customs Enforcement ("ICE")] to execute a final order" of removal, but a petitioner who is subject to a final order may seek a stay of removal pending the completion of the U-visa process.

1  8 C.F.R. § 214.14(c)(1)(ii).  The number of U visas available is statutorily capped at
2  10,000 per year.  8 U.S.C. § 1184(p)(2).

3       Because the number of U-visa petitions filed each year far exceeds the annual
4  limit, eligible petitioners typically must wait several years before receiving their U visas.
5  *See* 8 C.F.R. § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not
6  granted U-1 nonimmigrant status must be placed on a waiting list[.]").  In 2021, U.S.
7  Citizenship and Immigration Services ("USCIS") implemented a new "Bona Fide
8  Determination" ("BFD") policy which enables U-visa petitioners already in the United
9  States to receive benefits while they wait for a visa to become available.  *See Barrios*
10  *Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 438-39 (6th Cir. 2022) (describing
11  the new BFD process).  During this process, USCIS first determines whether a pending
12  petition is "bona fide," that is, "made in good faith; without fraud or deceit."  *See* USCIS,
13  Policy Manual, Vol. 3, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-
14  part-c-chapter-5 (last visited June 19, 2025) (https://perma.cc/V4B2-JCZQ).  Next,
15  USCIS, "in its discretion," determines whether the petitioner "merits a favorable exercise
16  of discretion."  *Id.*  If so, USCIS may exercise its discretion to grant the petitioner a Bona
17  Fide Determination Employment Authorization Document ("BFD EAD") and deferred
18  action.  *Id.*  Deferred action is "a form of prosecutorial discretion whereby the
19  Department of Homeland Security declines to pursue the removal of a person unlawfully
20  present in the United States."  *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 967
21  (9th Cir. 2017); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471,
22  484 (1999) ("*AADC*") (acknowledging the Executive's long history of "engaging in a

regular practice . . . of exercising [its] discretion [to grant deferred action] for humanitarian reasons or simply for its own convenience"); 8 C.F.R. § 274a.12(c)(14) (defining deferred action as "an act of administrative convenience to the government that gives some cases lower priority" for removal). When a U visa become available, the petition is subject to final adjudication before being approved. USCIS, Policy Manual, Vol. 3, Part C, Ch. 5. If USCIS does not exercise its discretion to grant the petitioner a BFD EAD and deferred action, or if the petitioner is outside of the United States, the petition is placed on a waitlist and is subject to waiting list adjudication. *Id.* If USCIS ultimately approves the petition, the petitioner receives lawful nonimmigrant status and employment authorization for up to four years. *See* 8 U.S.C. § 1184(p)(6), (p)(3)(B); 8 C.F.R. § 274a.12(a)(19).

B.    **Factual Background**

Mr. Velasco Gomez is a 53-year-old citizen of Mexico who is being held in custody at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Petition ¶ 1.) He has been removed from the United States to Mexico three times since 1991. (*See id.* ¶¶ 15-27.)

In November 1990, ICE's predecessor, the Immigration and Naturalization Service ("INS"), initiated deportation proceedings against Mr. Velasco Gomez. (*Id.* ¶ 16; *see id.*, Ex. 1 (November 4, 1990 Order to Show Cause).) Mr. Velasco Gomez was granted voluntary departure but did not depart the United States before the deadline to do so expired. (Petition ¶ 17; *id.*, Ex. 2 (order granting voluntary departure).) As a result,

the grant of voluntary departure was converted into an order of deportation, and Mr. Velasco Gomez was deported to Mexico on September 11, 1991. (*Id.* ¶¶ 17-18.)

Mr. Velasco Gomez re-entered the United States without inspection in late 1991 or early 1992. (*Id.* ¶ 19.) In November 1995, Mr. Velasco Gomez married his wife, who is now a naturalized United States citizen. (*Id.* ¶ 20.) Today, they have children and grandchildren who are also United States citizens. (*Id.*)

On March 19, 2008, Mr. Velasco Gomez was placed in removal proceedings[2] after a workplace raid. (*Id.* ¶ 23.) On May 27, 2009, an immigration judge ("IJ") terminated the removal proceedings to allow the Department of Homeland Security ("DHS") to reinstate the 1991 deportation order. (*Id.* ¶ 24.[3]) Mr. Velasco Gomez timely appealed this decision to the Board of Immigration Appeals ("BIA") and moved to reopen his 1991 deportation proceedings. (*Id.*) On January 26, 2010, the BIA upheld the IJ's decision to terminate the 2008 removal proceedings and denied Mr. Velasco Gomez's motion to reopen. (*Id.* ¶ 25.) After DHS reinstated the 1991 deportation order, Mr. Velasco Gomez was removed to Mexico for the second time in April 2011. (*Id.* ¶¶ 25-26.)

Mr. Velasco Gomez attempted several times to re-enter the United States without inspection in mid-2011. (*Id.* ¶ 26.) On May 13, 2011, Mr. Velasco Gomez was apprehended by immigration officials and his 1991 deportation order was again

---

[2] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") changed the previously-used term "deportation" to "removal."

[3] A prior order of removal may be reinstated "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal." 8 U.S.C. § 1231(a)(5).

1  reinstated. (*Id.*) He was processed for expedited removal and removed for a third time to

2  Mexico. (*Id.*; *see id.*, Exs. 5-6.) Mr. Velasco Gomez re-entered the United States without

3  inspection for the final time in late 2011. (*Id.* ¶ 27.)

4    On October 3, 2018, Mr. Velasco Gomez filed an I-918 Petition for U

5  Nonimmigrant Status with the USCIS Vermont Service Center ("VSC") and a I-192

6  Waiver of Inadmissibility. (*Id.* ¶ 28; *id.*, Ex. 3 (I-918 and I-192 receipts).) On May 25,

7  2023, the VSC issued a determination stating that, although the statutory cap for U visas

8  had already been reached that year, Mr. Velasco Gomez's I-918 Petition was bona fide

9  and thus "warrant[ed] a favorable exercise of discretion to receive employment

10 authorization and deferred action." (*Id.* ¶ 29; *id.*, Ex. 4 ("May 25, 2023 Letter").) The

11 determination letter also stated that Mr. Velasco Gomez's period of deferred action

12 would begin on the date his employment authorization began and that USCIS would

13 determine his eligibility for U nonimmigrant status when a U visa became available to

14 him. (May 25, 2023 Letter.) Mr. Velasco Gomez then applied for employment

15 authorization. (Petition ¶ 29.)

16   On October 10, 2024, Mr. Velasco Gomez accidentally drove to the border

17 between the United States and Canada. (*Id.* ¶ 30.) He briefly exited the United States

18 while attempting to turn around and was questioned by United States Customs and

19 Border Protection ("CBP") as he re-entered the United States. (*Id.*) He initially claimed

20 to be a United States citizen but then retracted that claim. (*Id.*) CBP issued a Form I-871

21 Notice of Intent/Decision to Reinstate Prior Order pursuant to Mr. Velasco Gomez's May

22 2011 order of deportation (*see id.*, Ex. 5 at 2) and released him on an Order of

1 | Supervision ("OSUP") (*id.*, Ex. 6), which required him to appear for regular check-ins
2 | with ICE. (*Id.* ¶ 30.) Mr. Velasco Gomez appeared for his first ICE check-in on October
3 | 23, 2024. (*Id.*)

4 | On November 14, 2024, DHS issued Mr. Velasco Gomez a BFD EAD. (*Id.* ¶ 31;
5 | *id.*, Ex. 7.) Under USCIS policy, the issuance of the BFD EAD granted him deferred
6 | action until a U visa becomes available under the statutory cap. (*Id.* ¶ 31; *see id.* ¶ 32
7 | (alleging that a U visa will become available for Mr. Velasco Gomez during the fiscal
8 | year beginning October 1, 2026)); *see* USCIS, Policy Manual, Vol. 3, Part C, Ch. 5.

9 | On January 21, 2025, Mr. Velasco Gomez attended his second ICE check-in
10 | pursuant to the OSUP. (Petition ¶ 33.) Five days later, on January 26, 2025, ICE
11 | arrested Mr. Velasco Gomez and placed him into detention at NWIPC. (*Id.* ¶ 34.)

12 | On January 31, 2025, Mr. Velasco Gomez filed an I-246 Application for Stay of
13 | Deportation or Removal. (*Id.* ¶ 35; *id.*, Ex. 9 at 3 ("I-246 Application").) On March 11,
14 | 2025, the ICE Office of Enforcement and Removal Operations ("ERO") in Seattle,
15 | Washington denied the I-246 Application because Mr. Velasco Gomez's "administrative
16 | immigration file indicates that [he] currently [has] approved deferred action . . . in
17 | conjunction with a pending Form I-918" and had "manifested a fear of removal to
18 | Mexico which is under USCIS review." (*Id.*, Ex. 9, at 1 ("March 11, 2025 Letter").)
19 | ERO explained that "granting an administrative stay of removal [was] not appropriate at
20 | [that] time" because Mr. Velasco Gomez was "not currently subject to imminent removal
21 | from the United States[.]" (*Id.*)

22 |

On March 27, 2025, USCIS completed its review of Mr. Velasco Gomez's claim that he feared removal to Mexico and found that he had not established reasonable fear. (Strzelczyk Decl. (Dkt. # 5) ¶ 9.)  Mr. Velasco Gomez's reasonable fear claim was then referred to an IJ, who concurred with USCIS's finding on April 2, 2025. (*Id.*)

In April 2025, ERO sent Mr. Velasco Gomez a letter stating that its March 11, 2025 denial of Mr. Velasco Gomez's application for an administrative stay of removal was "determined not to be accurate" and, as a result, the agency completed a second review and consideration of that application. (Thorward Decl. (Dkt. # 11-1) ¶ 2, Ex. ("April 2025 Letter"[4]) at 1.)  This time, ERO denied Mr. Velasco Gomez's application for a stay of removal because "the totality of the circumstances" did not support a finding of "urgent humanitarian" reasons or reasons of "significant public benefit" as required to grant such a stay. (*Id.* at 1-2.)

**C.    Procedural Background**

Mr. Velasco Gomez filed his 28 U.S.C. § 2241 petition for a writ of habeas corpus on March 24, 2025. (Petition.)  He alleges that his detention is unlawful under the Due Process Clause of the Fifth Amendment to the United States Constitution because USCIS granted him deferred action and has revoked neither the grant of deferred action nor his BFD EAD. (*Id.* ¶¶ 55-58.)  He does not challenge the validity of the reinstated order of removal. (*Id.* ¶ 56.)  Mr. Velasco seeks, as a remedy, a declaration that his continued

---

[4] The Federal Respondents acknowledge that the March 24, 2025 date on the letter itself is inconsistent with the April 25, 2025 date in the electronic signature. (MPI Resp. at 9 n.4.)

ORDER - 8

detention is unlawful and a writ of habeas corpus ordering his immediate release from detention. (*Id.* at 15-16.)

In their April 25, 2025 motion to dismiss and return, the Federal Respondents asserted that Mr. Velasco Gomez's removal to Mexico "is imminent." (MTD at 1, 4 (citing Strzelczyk Decl. ¶ 10).) On April 28, 2025, Mr. Velasco Gomez filed an emergency motion for a temporary restraining order ("TRO") and stay of removal based on that representation. (TRO Mot. (Dkt. # 6).) On that same date, Mr. Velasco Gomez filed a second lawsuit arising out of the same facts set forth above, in which he alleges that the Federal Respondents' decision to detain him and move forward with executing his removal despite his grant of deferred action was arbitrary and capricious in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*. *See generally* Compl., *Velasco Gomez v. Noem*, No. C25-0783JLR (W.D. Wash. Apr. 28, 2025), Dkt. # 1. The court consolidated the two matters under this case on June 6, 2025. (*See* 6/6/25 Consol. Order (Dkt. # 18).)

On April 29, 2025, the court granted Mr. Velasco Gomez's motion for a TRO and stayed his removal for 14 days. (TRO Order (Dkt. # 7).) On May 1, 2025, the court extended the TRO, stayed Mr. Velasco Gomez's removal through June 3, 2025, and set a briefing schedule on the motion for a preliminary injunction. (5/1/25 Order (Dkt. #10).) On May 27, 2025, the court further extended the TRO and stayed Mr. Velasco Gomez's removal through June 17, 2025, to allow it time to consider both the motion to dismiss and the motion for preliminary injunction. (5/27/25 Order (Dkt. # 17).) The court extended the TRO a final time on June 17, 2025. (6/17/25 Order (Dkt. # 19).)

## III. ANALYSIS

For the reasons set forth below, the court concludes that it lacks subject matter jurisdiction over Mr. Velasco Gomez's claims pursuant to 8 U.S.C. § 1252(g), which bars federal courts from reviewing claims arising from ICE's decision or action to execute a removal order. As a result, the court grants the Federal Respondents' motion to dismiss Mr. Velasco Gomez's habeas petition and denies Mr. Velasco Gomez's motion for a preliminary injunction.

A.  **Motion to Dismiss**

The court begins, as it must, by considering whether it has jurisdiction to consider Mr. Velasco Gomez's due process claim. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction.").

In general, a district court may exercise jurisdiction over a § 2241 habeas petition when the petitioner is in custody and alleges that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). Under the jurisdictional bar set forth in 8 U.S.C. § 1252(g), however,

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]

8 U.S.C. § 1252(g). This jurisdictional bar applies "notwithstanding any other provision of law," including § 2241. *Id.* The Supreme Court has narrowly construed § 1252(g) to apply only to "a limited subset of deportation claims" arising directly from the three

enumerated actions. *AADC*, 525 U.S. at 483. Thus, in determining its jurisdiction, the court must consider whether Mr. Velasco Gomez's due process claim arises from ICE's decision or action to execute his removal order. The court concludes that it does.

Here, Mr. Velasco Gomez challenges ICE's decision to detain him and execute his final order of removal despite USCIS's grant of deferred action pending the adjudication of his U-visa application. (*See, e.g.*, Petition ¶ 56 (alleging that Mr. Velasco Gomez's "detention by [the Federal Respondents] and their attempt to *execute that reinstatement* in light of [Respondent] DHS's unrevoked grant of deferred action" violates the Due Process Clause (emphasis added)); MTD Resp. at 2 (stating the "issue at the heart of [his] claim" is "whether the government can *execute a noncitizen's removal*, reinstated or not, when the government has granted that noncitizen deferred action status" (emphasis added)).) The parties have not identified—and the court is not aware of—any case authority addressing the narrow issue of whether § 1252(g) bars review of a decision to execute a valid removal order where the petitioner has been granted deferred action through the BFD process. (*See generally* MTD; MTD Resp.) Courts in this circuit, however, held, before USCIS implemented its BFD policy in 2021, that § 1252(g) bars review of a decision to execute removal orders while a petitioner's U-visa application is pending. *See, e.g.*, *Velarde-Flores v. Whitaker*, 750 F. App'x 606, 607 (9th Cir. 2019) ("The decision whether to remove aliens subject to valid removal orders who have applied for U-visas is entirely within the Attorney General's discretion[,]" thus, petitions to halt "the government's decision to execute valid orders of removal . . . facially fall[ ] within the statutory jurisdictional bar."); *see also Balogun v. Sessions*, 330 F. Supp. 3d

1211, 1211, 1215 (C.D. Cal. 2018) (noting that "courts have had no difficulty concluding that denials of stays of removal—even with pending U-visa applications—are unreviewable under section 1252(g)" (compiling cases)); *see also* 8 C.F.R. § 214.14(c)(1)(ii) ("The filing of a petition for U-1 nonimmigrant status has no effect on ICE's authority to execute a final order, although the alien may file a request for a stay of removal[.]"). In addition, although not directly on point, one court in this district recently held that § 1252(g) did not bar jurisdiction where the plaintiff, who had already received a BFD EAD, "d[id] not challenge his removal order or seek review of the Government's decision to execute it" but instead brought "an APA claim challenging the Government's unreasonable delay in adjudicating his U-visa petition[.]" *Sepulveda Ayala v. Noem*, No. C25-5185JNW, 2025 WL 1616075, at *3 (W.D. Wash. June 5, 2025). That court distinguished *Balogun* on the basis that *Balogun* involved a direct challenge to the petitioner's removal rather than an APA claim for unreasonable agency delay in benefit adjudications—the latter of which courts have long held falls beyond the reach of § 1252(g). *Id.* Based on this authority, the court concludes that § 1252(g)'s jurisdictional bar applies to Mr. Velasco Gomez's challenge to his detention and removal, and as a result, the court lacks jurisdiction to consider Mr. Velasco Gomez's habeas petition.

Mr. Velasco Gomez argues that § 1252(g) does not bar the court from reviewing his claims because his petition raises the "purely legal question" of whether his detention and imminent removal are unlawful in light of his deferred action and does not challenge ICE's discretionary authority to reinstate his prior removal orders, execute the removal, or deny his application for a stay of removal. (MTD Resp. at 2-5.) Mr. Velasco Gomez

bases his argument on three cases: *United States v. Hovsepian*, *Walters v. Reno*, and *Mustata v. Department of Justice*. (MTD Resp. at 3-5.) The court does not find these cases persuasive because the claims discussed therein did not directly arise from challenges to the actions listed in § 1252(g). In *Hovsepian*, two lawful permanent residents were convicted of crimes that were not deportable offenses at the time they were sentenced. 359 F.3d 1144, 1149 (9th Cir. 2004) (en banc). Several years later, Congress amended the immigration laws to retroactively make one of those crimes a ground for deportation. *Id*. One of the defendants sought a permanent injunction barring the INS from retroactively applying the changes to him. *Id.* at 1151. The district court granted the injunction, which had the practical effect of preventing the INS from deporting that defendant on any ground not in existence at the time of his original sentencing. *Id.* at 1155. The Ninth Circuit held that § 1252(g) did not bar the district court's jurisdiction to enter the injunction because the "gravamen" of the defendant's claim did not arise from a decision or action to commence removal proceedings, adjudicate cases, or execute removal orders, but rather from Congress's allegedly improper retroactive application of the amended statutes. *Id.* at 1155-56. As the *Hovsepian* court explained:

> The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority.

*Id.* at 1155.

In *Walters*, the Ninth Circuit concluded that the district court had jurisdiction to consider the plaintiffs' claim that the government's procedure for procuring waivers of the right to a hearing in document fraud proceedings violated the Due Process Clause. 145 F.3d 1032, 1052 (1998). Noting that the plaintiffs' removal orders "were simply a consequence of the violations, not the basis of the claims," the panel held that § 1252(g) did not bar the district court's jurisdiction because the claims did not arise from a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" but instead from a "general collateral challenge[] to unconstitutional practices and policies used by the agency" *during* the plaintiffs' deportation proceedings. *Id.*

Finally, in *Mustata*, the Sixth Circuit Court of Appeals held that the district court had jurisdiction over the petitioners' claim that their attorney's ineffective assistance during their immigration proceedings violated their Fifth and Sixth Amendment rights, resulting in deportation orders being entered against them without due process. 179 F.3d 1017, 1019, 1022 (6th Cir. 1999). The Sixth Circuit reasoned that the petitioners' challenge survived the jurisdictional bar because their claim arose from their attorney's allegedly constitutionally deficient performance before and during their immigration hearings, rather than from the agency's commencement of proceedings, adjudication of cases, or execution of a removal order. *Id.* at 1022-23.

In these cases, the claims at issue arose from an allegedly unconstitutional retroactive application of the law governing deportability (in *Hovsepian*) or allegedly unconstitutional conduct in the course of immigration proceedings (in *Walters* and

*Mustata*). Here, in contrast, Mr. Velasco Gomez's claims arise directly from the agency's allegedly unconstitutional decision and action to detain him and execute his valid removal order despite his deferred action status. As such, "it facially falls within the statutory jurisdictional bar," *Velarde-Flores*, 750 F. App'x at 607, and § 1252(g) bars the court from exercising jurisdiction to consider it. *See, e.g.*, *Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022) ("No matter how [Petitioner] frames it, his challenge is to the Attorney General's exercise of [her] discretion to execute [Petitioner's] removal order, which we have no jurisdiction to review.").

Mr. Velasco Gomez also argues, albeit briefly, that if the court determines that § 1252(g) precludes judicial review of his claims, then § 1252(g) "violates the Suspension Clause" of the United States Constitution. (MTD Resp. at 11-12.) The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Case of Rebellion or Invasion the public Safety may require it." U.S. Const., art. I, § 9, cl. 2. "The Supreme Court has held, however, that 'the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.'" *Puri v. Gonzales*, 464 F.3d 1038, 1041-42 (9th Cir. 2006) (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977)).

Although Mr. Velasco Gomez asserts that the Suspension Clause renders his claims reviewable, he offers no reasoning to justify the court's assumption of jurisdiction on that basis. (*See* MTD Resp. at 11-12; *see also* MPI (saying nothing about jurisdiction under the Suspension Clause); MPI Reply at 6-7 (repeating the same argument Mr.

ORDER - 15

Velasco Gomez made in response to the Federal Respondents' motion to dismiss).) Therefore, having concluded that it lacks jurisdiction to decide the claims in Mr. Velasco Gomez's petition for writ of habeas corpus, the court grants the Federal Respondents' motion to dismiss.[5]

**B.    Motion for Preliminary Injunction**

To demonstrate an entitlement to injunctive relief, Mr. Velasco Gomez must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Ninth Circuit, a preliminary injunction is also appropriate if "serious questions going to the merits were raised and the balance of hardships tips sharply" in the moving party's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22. The likelihood of success on the merits is the most important factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

Mr. Velasco Gomez argues that he is entitled to a preliminary injunction because the Federal Respondents' decision to "*per se* revoke his grant of deferred action by detaining him and seeking to execute his removal to Mexico" without good cause violates

---

[5] Because the court grants the Federal Respondents' motion to dismiss on jurisdictional grounds, it does not consider the Federal Respondents' argument that Mr. Velasco Gomez's grant of deferred action does not preclude ICE from executing a reinstated removal order. (*See* MTD at 6-7.)

the Due Process Clause and the APA.  (MPI at 3; *see also id.* at 5-7.)  The court has already held that § 1252(g) deprives it of jurisdiction to consider the due process claims Mr. Velasco Gomez raises in his habeas petition.  Section 1252(g), read in conjunction with the APA, also bars the court from reviewing Mr. Velasco Gomez's APA claim.  *See* 5 U.S.C. § 701(a)(1) (carving out "statutes [that] preclude judicial review" as an exception to judicial review of agency actions); 8 U.S.C. § 1252(g) (barring jurisdiction over listed decisions or actions "notwithstanding any other provision of law").  Because Mr. Velasco Gomez has not established that this court has subject matter jurisdiction over his due process and APA claims, he cannot show a "likelihood of success on the merits" justifying injunctive relief.  Accordingly, the court must deny Mr. Velasco Gomez's motion for a preliminary injunction.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS the Federal Respondents' motion to dismiss Mr. Velasco Gomez's habeas corpus petition (Dkt. # 4) and DENIES Mr. Velasco Gomez's motion for a preliminary injunction (Dkt. # 11).  The court finds good cause to EXTEND its stay of Mr. Velasco Gomez's removal and relocation for an additional ten days to allow him the opportunity to seek injunctive relief from the Ninth Circuit pending appeal.

Dated this 20th day of June, 2025.

JAMES L. ROBART
United States District Judge